UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VERIVEND INC.,

                    Plaintiff,

            v.

JACOB LEVI CLAVER and
DIGITAL ASCENSION GROUP LLC,

                    Defendants.
_____

**COMPLAINT**

Civil Action No.

Plaintiff Verivend Inc. ("Verivend"), by its attorneys, Phillips Lytle LLP, for its Complaint against Defendants Jacob Levi Claver ("Claver") and Digital Ascension Group LLC ("Digital Ascension," and collectively with Claver, "Defendants"), alleges upon information and belief:

## NATURE OF THE ACTION

1.      Verivend owns and operates a payment processing platform for businesses to raise capital, pay distributions, and deploy capital.

2.      Verivend brings this action against its former customers Claver and Digital Ascension for breach of contract, misappropriating Verivend's name and intellectual property, and making false and libelous statements about Verivend to third parties that damage Verivend's goodwill and business reputation—actions taken by Claver in an effort to cover up his failed attempt to raise capital for other businesses.

3.      As part of his cover-up scheme, Claver registered an unauthorized domain using Verivend's trademarked name, which is confusingly similar to the official

Verivend domain.  Claver then created an email address impersonating Verivend and its employees, and used that deceptive email address to manufacture purported Verivend wire transfer confirmations.  Claver also sent emails and text messages to third-party companies with images of purported wire transfers approved by Verivend, and blamed Verivend for delayed or failed wire transfers.  In actuality, however, Claver fabricated the purported wire transfer confirmations and his conversations with Verivend, which never occurred.  Indeed, upon information and belief, although Defendants had accounts with Verivend, they never raised any capital for those third-party companies using Verivend's platform.

4.      Defendants' deceptive and unlawful actions violated their agreement with Verivend, Verivend's intellectual property rights, and other laws.  Verivend therefore seeks damages and injunctive relief, including restraining Claver and his entities from using Verivend's name to impersonate Verivend, violating Verivend's intellectual property rights, or making false and libelous statements about Verivend.

## PARTIES

5.      Plaintiff Verivend is a Delaware corporation with a principal place of business at 599 Delaware Avenue, Suite 209, Buffalo, New York 14202.

6.      Defendant Claver is an individual residing at 1176 Vz County Road 1215, Canton, Texas 75103.

7.      Defendant Digital Ascension is a Wyoming limited liability company with a principal place of business at 9100 John W. Carpenter Fwy, Dallas, Texas 75247. Upon information and belief, Digital Ascension is controlled by Claver.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this controversy based upon diversity of citizenship pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.     This Court also has subject matter jurisdiction over this controversy based upon a federal question pursuant to 28 U.S.C. § 1331.  Specifically, this action arises under 15 U.S.C. § 1114 (trademark infringement), 15 U.S.C. § 1125 (unfair competition), and 15 U.S.C. § 1125(d) (cybersquatting), as described below.

10.     Venue in this District is proper pursuant to 28 U.S.C. § 1391 because Verivend and Defendants consented to venue in this District pursuant to Section 12.13 of the relevant Agreement (defined below).

11.     This Court has jurisdiction over Defendants because Defendants transact business within New York; have entered into contracts to supply goods or services in New York; have committed a fraudulent or tortious act within New York; regularly do or solicit business within New York; and/or derive substantial revenues from services rendered in New York.  Defendants have further consented to such jurisdiction pursuant to Section 12.13 of the relevant Agreement (defined below).

## FACTS

**A.     Verivend**

12.     Verivend operates a payment processing platform for businesses to raise capital, pay distributions, and deploy capital.

13.     Verivend is the owner of a federally registered trademark for "VERIVEND" (the "Verivend Mark").

14.    Verivend owns and operates the domain "verivend.com" in connection with its services (the "Verivend Domain").

**B.    Claver Opens Verivend Accounts**

15.    On or about September 19, 2023, Digital Ascension and Verivend entered into a Software as a Service Agreement (the "Agreement").  Claver, acting through Digital Ascension, opened several accounts on the Verivend platform.

16.    Section 2.3 of the Agreement provides that "nothing in the Agreement grants . . . to [Defendants] or any third party any Intellectual Property Rights or other right, title, or interest in or to the Verivend IP."

17.    Section 2.4 of the Agreement provides, in relevant part, that Verivend may suspend access to its services if Defendants are "using the Services or Verivend IP in violation of the Agreement or for fraudulent or illegal activities."

18.    Further, under Section 3 of the Agreement, Defendants agreed that:

> [Defendants] shall not at any time, directly or indirectly, and shall not permit any Authorized User or other person to . . . use the Services or the Verivend IP in any manner or for any purpose that infringes, misappropriates, or otherwise violates any Intellectual Property Right or other right of any person, or that violates any applicable law.

19.    The Agreement also contains an indemnification provision.  Section 9 of the Agreement provides that:

> [Defendants] shall indemnify, defend, and hold harmless Verivend from and against all losses, damages, deficiencies, claims, actions, judgments, settlements, interest, awards, penalties, fines, costs, or expenses of whatever kind, including reasonable attorneys' fees and the costs of enforcing any right to indemnification hereunder arising out of, related to, resulting from, or in connection with:  . . . (ii) [Defendants'] negligence or willful misconduct; (iii) [Defendants'] violation of law; (iv) [Defendants'] breach of the Agreement . . . ;

(v) [Defendants'] improper use of the Services; (vi) any act or omission of [Defendants] or any Authorized User; (vii) actions taken or omitted in reliance upon any oral or written communications from [Defendants] or any Authorized User . . . and/or (ix) [Defendants'] violation of any laws and regulations, including, but not limited to, any applicable anti-money laundering and/or securities laws and regulations.

20.      Section 11.2 of the Agreement provides that "Verivend may terminate the Agreement, effective on written notice to [Defendants], for [Defendants'] breach of Section 3 of this SaaS Agreement, without any cure period."

21.      Section 12.13 of the Agreement also provides that:

The Parties agree that in any dispute exclusive jurisdiction and venue will be in the state or federal courts located in Erie County, New York.  The Parties mutually acknowledge and agree that they will not raise in connection therewith, and hereby waive, any defenses based upon venue, inconvenience of forum, or lack of personal jurisdiction in any action or suit brought in accordance with the foregoing.

22.      In addition to the Agreement, Claver caused Digital Ascension to execute an Order Form, whereby Defendants agreed to Verivend's Acceptable Use Policy and its Terms and Conditions.

23.      Pursuant to Verivend's Acceptable Use Policy, Defendants agreed "not use the Verivend service for activities that . . . Violate any law, statute, ordinance or regulation."

24.      Verivend's Terms and Conditions provide that Verivend's "trademarks, service marks, and logos" may not be "copied, reproduced, aggregated, republished, uploaded, posted, publicly displayed, encoded, translated, transmitted, distributed, sold, licensed, or otherwise exploited for any commercial purpose whatsoever, without [Verivend's] express prior written permission."

25.    Verivend's Terms and Conditions also provide that Defendants shall not "use the Services or the Site in any manner or for any purpose that infringes, misappropriates, or otherwise violates any intellectual property right or other right of any person, or that violates any applicable law, regulation, or rule."

26.    Further, under Verivend's Terms and Conditions, Defendants are prohibited from posting or submitting content that is:

1.    False, misleading, deceiving, inaccurate or dishonest.

2.    Defamatory or invasive of another person's right of privacy or right of publicity . . . .

5.    Illegal . . . .

6.    Infringing intellectual property or other proprietary rights of any party, or not authorized, such as content that you did not create or do not have the permission to use . . . .

7.    Creating a privacy or security risk to any person.

8.    Spam, letters, or pyramid schemes.

9.    In Verivend's sole discretion, objectionable or exposes users to harm or liability.

**C.    Defendants Falsify Emails and Wire Transfers Purportedly from Verivend and Falsely Claim Communications with Verivend in Connection with Purportedly Raising Capital for xSPECTAR**

27.    On November 30, 2023, Verivend received a call from Dirk Schepens ("Schepens"), the manager of Monic Sarl, a company based in Luxembourg.

28.    Schepens told Verivend that Claver was purportedly raising capital for xSPECTAR using his accounts with Verivend.  Schepens was promised an investment that he had never received, and Claver had blamed Verivend for purportedly failed or delayed

wire transfers.  At the request of Verivend, Schepens provided Verivend with copies of emails and screenshots of his conversations with Claver.

29.    The emails and screenshots provided by Schepens revealed that Claver had been fabricating purported Verivend wire transfers and communications with Verivend. Indeed, Claver had created a fake Verivend email and impersonated Verivend employees to fabricate alleged emails and wire confirmations from Verivend.

30.    Upon information and belief, Claver did not raise any capital for xSPECTAR using the Verivend platform.

31.    Although Claver and/or JM Equity had an account on the Verivend platform under "JM EQuity Venture LLC - XPECTAR," there were no wire transfers to/from that Verivend account.

32.    As an example of the information provided by Schepens, on November 7, 2023, Claver sent Schepens a picture of a Verivend wallet indicating $1,075,310.00 as "Fully Paid."  Upon information and belief, this image was either for an account unrelated to xSPECTAR or Claver had manufactured the image.

33.    Further, on November 10, 2023, Claver sent Schepens a picture of a Verivend wallet dashboard, showing an available balance of $1,075,310.00.  Again, upon information and belief, this image was either for an account unrelated to xSPECTAR or Claver had manufactured the image.

34.    Claver and Schepens then had the following exchange:

Claver:  "Capital is back in my account…  Rodney [Verivend CEO] said they [Verivend] fat fingered the IBAN number after reviewing it..  What [sic] me to push again that way or move to my bank account and convert to USDC?"

. . . .

Schepens:  "So no idea what issue can be… my bank is aware and has contract and all good with it… regularly make these transfers and never had issue[.]"

Claver:  "It was verivend."

Schepens:  "It should be in in 24h normally…"

Claver:  "Yeah max ive ever seen is a couple days.  Weve had other issues with incoming international wires and ive never sent one out before[.]"

Schepens:  "No worries… hope you had a good flight… and can stress them to make sure it gets to us in next 24h [symbol] as it should be…"

35.    Claver's statements are false.  The purported communication between Claver and Rodney Reisdorf, Verivend's CEO ("Reisdorf"), never happened.  Further, Verivend never "fat fingered" an IBAN number on a transaction for Claver, and Reisdorf never made any communication suggesting they did.

36.    On November 15, 2023, Claver texted Schepens:  "Just got off with them [Verivend] and they said it could take up to 3-5 days.  Went out Monday [because] of the holiday on Friday."

37.    Claver's statement is false.  This purported communication between Claver and Verivend on or around November 15, 2023 never happened.

38.    On November 20, 2023, Claver sent an email to Schepens stating "Verivend has the funds and is moving the funds back into my account.  I will be removing them as we discussed and sending them myself asap."

39.    Claver's statement is false.  Verivend did not communicate to Claver that it "had the funds" or that it was going to "move funds back into" his account.

40.    Claver's email to Schepens also contained an image purporting to be a screenshot of a November 20, 2023 email from "Jon Ebel <jon@verivend.support>" to Claver, with a subject of "Xspectar wire info."

41.    This purported November 20, 2023 email contained what appeared to be an image of a wire confirmation and stated the following:

> Per our phone conversation please see the confirmation below. I see the funds back on our side again this morning, and will get them back into your account. After review of the wire information, it looks like we incorrectly entered the IBAN number and that's why it has been rejected. Please let us know if you'd like us to resend or you plan to remove the funds and do it yourself as you stated on the phone.

42.    Jon Ebel ("Ebel"), Verivend's Chief Technology Officer, never sent a purported November 20, 2023 email to Claver.

43.    The Verivend Domain is "verivend.com" (not "verivend.support") and Ebel's email address is "jon@verivend.com" (not "jon@verivend.support").

44.    The purported wire confirmation from Verivend included in the alleged November 20, 2023 email also was fake.

45.    Upon information and belief, Claver manufactured the purported November 20, 2023 email from Ebel and fabricated the purported wire transfer confirmation in that email to deceive Schepens.

46.    The domain "verivend.support" was registered on or about November 15, 2023 without the permission or authorization of Verivend.

47.    Upon information and belief, the "verivend.support" domain was registered by Claver; Claver then used this confusingly similar domain to generate the unauthorized email address "jon@verivend.support" to impersonate Ebel; and using that

email account, Claver manufactured a purported wire transfer confirmation by Verivend. Claver then forwarded this fabricated conversation to Schepens.

48.     Upon information and belief, when Schepens did not receive the funds, he asked Claver for proof of the wire transfer.  On or about November 21, 2023, Claver sent Schepens an image purporting to confirm a transfer authorized by "Rodney Reisdorf," with an "International Wire-Tracking ID" of "3319241," for $875,000.00 from an account named "Settlement XXXXXX7000" to "MONIC SARL."

49.     This purported wire confirmation was fake.  Mr. Reisdorf did not approve a wire for $875,000.00 to MONIC SARL.

50.     Claver then sent another text message to Schepens.  Claver wrote that Verivend "said it was returned because the bank they go thru requires 11 digits for the Swift code and I didnt add the XXX on the end…"

51.     Claver's statement is false.  This purported communication between Claver and Verivend never happened.

52.     In sum, Claver falsely represented to Schepens that wire transfers had been initiated but then delayed or failed as a result of Verivend.  Further, Claver supported these misrepresentations by manufacturing fake Verivend emails, wire confirmations, and wallet account images.  Upon information and belief, in actuality, Claver did not raise any funds for xSPECTAR using the Verivend platform and never initiated any purported wire transfers from Verivend accounts.

**D.    Verivend Terminates All of Defendants' Accounts
        After Claver Admits to Misleading Schepens**

53.    After receiving the information from Schepens, Verivend immediately commenced an investigation of the allegations.

54.    As part of its investigation, Verivend held a video conference with Claver on November 30, 2023 (the "November 30th Conference").

55.    During the November 30th Conference, Claver admitted "I misled [Schepens] and I shouldn't have done that."

56.    Claver further stated, "I made promises to [Schepens], and did not raise the money in time, and was being pressured and . . . made poor choices."

57.    Verivend informed Claver that "we have shut off all of your access to Verivend because we can't trust this relationship anymore."

58.    Verivend further informed Claver that it was going to "sever this relationship, because we can't have you using Verivend in our name to promise and provide information that's not factual to him."

59.    By letter dated November 30, 2023, Verivend terminated the Agreement and all accounts related to Defendants.

**E.    Defendants Falsified Wire Transfers Purportedly from Verivend
        in Connection with Purportedly Raising Capital for ThroughPut**

60.    On or about December 4, 2023, Verivend learned that Claver had used fabricated wire confirmations, purportedly from Verivend, in connection with purportedly raising funds for ThroughPut, Inc. ("ThroughPut").

61.    On or about December 4, 2023, the COO of ThroughPut forwarded to Verivend an email that he had received from Claver on November 13, 2023 (the

"November 13 Email"). The November 13 Email stated: "Please see below wire confirmation" and included an image that appeared to be a screenshot of a wire confirmation.

62. The image in the November 13 Email purported to confirm a wire transfer authorized by "Jon Ebel," with a "Domestic Wire-Tracking ID" of "3303465," for $1,100,000.00 from an account "Settlement XXXXXX7000" to "ThroughPut, Inc."

63. Claver's statements in the November 13 email were false, and the purported wire transfer approved by Verivend was fabricated.

64. There was no wire transfer for $1,100,000.00 authorized by Verivend to ThroughPut on or about November 11, 2023. Further, Ebel's name would not have appeared on a Verivend wire confirmation, because Ebel did not have access or authority to approve such outgoing wires.

65. Further, upon information and belief, Claver represented to the COO of ThroughPut that additional wire transfers would be made from Defendants' Verivend accounts during the week of December 4, 2023.

66. Claver's statement is false. Verivend had closed Defendants' accounts on November 30, 2023, and therefore Defendants could not send any wire transfers using Verivend during the week of December 4, 2023.

## FIRST CLAIM
### (Breach of Contract)

67. Verivend repeats and realleges each of the above paragraphs.

68.     Verivend and Defendants entered into a valid agreement when they executed the Order Form, which incorporated the Agreement, Verivend's Acceptable Use Policy, and Verivend's Terms and Conditions.

69.     Defendants breached the Agreement, Verivend's Acceptable Use Policy, and/or Verivend's Terms and Conditions by, among other actions:

(a)     using Verivend's name, trademark, and other intellectual property to create and use the unauthorized "verivend.support" domain;

(b)     using Verivend's name, trademark, other intellectual property, and the unauthorized "verivend.support" domain, to fabricate emails purportedly sent from Verivend and its employees;

(c)     using Verivend's name, trademark, and other intellectual property, and the unauthorized "verivend.support" domain, to fabricate wire confirmations purportedly from Verivend accounts or approved by Verivend;

(d)     using Verivend's name, trademark, and other intellectual property, and the unauthorized "verivend.support" domain, to make false representations to third parties regarding alleged failures by Verivend to complete wire transfers;

(e)     using Verivend's name, trademark, and other intellectual property, and the unauthorized "verivend.support" domain, to make false representations to third parties regarding their Verivend accounts or transfers to/from those accounts;

(f)     using Verivend's name, trademark, and other intellectual property, and the unauthorized "verivend.support" domain, to engage in fraud or other illegal or unlawful activities; and

(g)    using Defendants' status as a Verivend customer or its connection to Verivend to engage in fraud or other illegal or unlawful activities.

70.    As a proximate cause of this breach, Verivend was damaged in an amount to be determined at trial.  This includes, but is not limited to, damage to Verivend's goodwill and business reputation, and the loss of potential customers.

## SECOND CLAIM
### (Indemnification)

71.    Verivend repeats and realleges each of the above paragraphs.

72.    Verivend and Defendants entered into a valid agreement when they executed the Order Form, which incorporated the Agreement, Verivend's Acceptable Use Policy, and Verivend's Terms and Conditions.

73.    Section 9 of the Agreement provides that Defendants "shall indemnify, defend, and hold harmless Verivend from and against all losses, damages . . . related to, resulting from, or in connection with," among other things, Defendants' "violation of law," "breach of the Agreement," "improper use of the Services," and "violation of any laws and regulations, including, but not limited to, any applicable anti-money laundering and/or securities laws and regulations."

74.    As set forth above, Defendants breached the Agreement; improperly used Verivend's name, trademarks, and other intellectual property; improperly used Verivend's services; and violated applicable laws.

75.    Verivend is therefore entitled to indemnification from Defendants under Section 9 of the Agreement, in an amount to be determined at trial.

## THIRD CLAIM
### (Trademark Infringement)

76.    Verivend repeats and realleges each of the above paragraphs.

77.    Verivend is the owner of the federally registered Verivend Mark.

78.    The Verivend Mark is distinctive.

79.    The acts of Defendants alleged above were done without Verivend's consent, and constitute a use in commerce and interstate commerce of a reproduction or colorable imitation of the federally registered Verivend Mark in connection with the sale and distribution of goods and/or services of Defendants.

80.    Defendants' use of the Verivend Mark has caused or is likely to cause confusion or mistake, or to deceive.

81.    Defendants' use of the Verivend Mark has or is likely to lead the public to believe that Defendants' products or services are affiliated or associated with, related to, sponsored by, approved by or connected with Verivend.

82.    Defendants' conduct permits them to trade on the goodwill that Verivend has developed over several years at considerable expense.

83.    Accordingly, Defendants have infringed the trademark rights of Verivend in violation of relevant trademark laws, including 15 U.S.C. § 1114.

84.    Defendants' use of the Verivend Mark was and is intentional or with a reckless disregard for Verivend's rights in its federally registered Verivend Mark.

85.    Defendants have caused and are causing injury to Verivend, the public and the markets in which Verivend does business.

86.     Defendants have made and/or will make unlawful gains and profits from their infringement of the Verivend Mark; and Verivend, due to Defendants' unlawful infringement, has been and is being deprived of goodwill, rights and profits which otherwise would inure to it.

87.     Defendants have caused and will continue to cause immediate and irreparable harm to Verivend, and Verivend has no adequate remedy at law.

88.     Verivend is entitled to preliminary and permanent injunctive relief to enjoin Defendants and prevent further violation of Verivend's rights.

89.     In addition, Verivend has suffered and will continue to suffer damages, including treble damages, in an amount to be proven at trial, or is entitled to statutory damages pursuant to 15 U.S.C. 1117.

## FOURTH CLAIM
### (Unfair Competition)

90.     Verivend repeats and realleges each of the above paragraphs.

91.     Verivend is the owner of the federally registered Verivend Mark.

92.     The Verivend Mark is distinctive.

93.     Defendants have no rights in and no right to use the Verivend Mark.

94.     Among other things, Defendants' acts perpetuate the false and misleading commercial impression that Defendants are authorized to use the Verivend Mark in connection with the sale of its products and/or services, or are otherwise affiliated, connected, associated with or sponsored by Verivend.

95.     Defendants have engaged in unfair competition in violation of the relevant state and federal laws, including 15 U.S.C. § 1125.

- 16 -

96.     Defendants have caused and will continue to cause immediate and irreparable harm to Verivend, and Verivend has no adequate remedy at law.

97.     Verivend is entitled to preliminary and permanent injunctive relief to enjoin Defendants and prevent further violation of Verivend's rights.

98.     In addition, Verivend has suffered and will continue to suffer damages, including treble damages, in an amount to be proven at trial, or is entitled to statutory damages pursuant to 15 U.S.C. 1117(c).

**FIFTH CLAIM**
**(Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d))**

99.     Verivend repeats and realleges each of the above paragraphs.

100.    Verivend is the owner of the federally registered Verivend Mark.

101.    The Verivend Mark is distinctive.

102.    Verivend owns the Verivend Domain and uses the Verivend Domain in connection with its services.

103.    Upon information and belief, Claver or an entity controlled by Claver registered the domain "verivend.support."

104.    Verivend did not authorize or approve the registration or use of the domain "verivend.support."

105.    The domain "verivend.support" is identical and/or confusingly similar to the Verivend Mark and Verivend Domain.

106.    Defendants used the unauthorized "verivend.support" domain to create an email address, impersonate Verivend and its employees, and manufacture fake emails and wire confirmations purportedly from Verivend.

107.    Defendants therefore created and used the "verivend.support" domain with a bad-faith intent to profit from the Verivend Mark.

108.    Verivend is entitled to damages in an amount to be determined at trial.

109.    Verivend is also entitled to injunctive relief, including but not limited to (a) the cancellation or transfer of the "verivend.support" domain and any other domains registered by Defendants (or any other entities controlled by Claver) that use the Verivend Mark or are confusingly similar to the Verivend Mark; and (b) restraining Claver and any entities controlled by Claver from creating or using other domains that use the Verivend Mark or are confusingly similar to the Verivend Mark.

## SIXTH CLAIM
### (Defamation/Trade Libel)

110.    Verivend repeats and realleges each of the above paragraphs.

111.    Claver made false statements to third parties about Verivend.

112.    Among other false statements, Claver falsely represented to Schepens that he had initiated wire transfers but that funds had not been transferred because of mistakes and delays caused by Verivend, and falsely represented to ThroughPut that Verivend had authorized wire transfers.

113.    Claver knew that these statements were false when he made them.

114.    Claver's knowingly false statements harmed Verivend.  Verivend's reputation as a secured and trusted payment processing platform is central to its business. These false statements damaged Verivend's goodwill and business reputation by falsely representing that Verivend delayed or failed to transfer funds from its accounts, or was otherwise to blame for purportedly delayed payments.

115.    Verivend is therefore entitled to damages in an amount to be determined at trial.  This includes, but is not limited to, damage to Verivend's goodwill and business reputation, and the loss of potential customers.

## SIXTH CLAIM
### (Permanent Injunction)

116.    Verivend repeats and realleges each of the above paragraphs.

117.    As set forth above, Defendants have violated Verivend's intellectual property rights; impersonated Verivend and its employees using deceptive emails and unauthorized email domains; fabricated documents from Verivend, including purported wire confirmations approved by Verivend; and made statements to third parties that falsely blame Verivend for purported delayed or failed wire transfers.

118.    Verivend has suffered and, absent an injunction, will continue to suffer irreparable injury as result of Defendants' actions.  This includes, among other irreparable injury, damage to Verivend's goodwill and business reputation.

119.    Verivend has no adequate remedy at law.

120.    The balance of hardships weighs in favor of Verivend.  Defendants will suffer no hardship if they are prohibited from violating Verivend's intellectual property rights or impersonating Verivend.  On the other hand, Verivend's reputation as a secured and trusted payment processing platform is central to its business.

121.    The public interest will be served by enjoining Defendants from engaging in deceptive and unlawful conduct.

122.    The Court should therefore permanently enjoin Defendants from (a) the unauthorized use of the Verivend Mark or Verivend's other intellectual property,

including by registering confusingly similar domains; (b) impersonating Verivend or its employees; (c) fabricating or manipulating documents that purport to show wire transfers from Verivend or approved by Verivend; (d) making knowingly false statements to third parties regarding Verivend or its business practices.

WHEREFORE, Plaintiff Verivend Inc. demands Judgment against Defendants as follows:

A.    On its First Claim, damages in an amount to be determined at trial, plus interest, attorneys' fees, costs and disbursements;

B.    On its Second Claim, damages in an amount to be determined at trial, plus interest, attorneys' fees, costs and disbursements;

C.    On its Third Claim, preliminary and permanent injunctive relief to enjoin Defendants and prevent further violation of Verivend's rights; and damages, including treble damages, in an amount to be determined at trial, or statutory damages pursuant to 15 U.S.C. 1117;

D.    On its Fourth Claim, preliminary and permanent injunctive relief to enjoin Defendants and prevent further violation of Verivend's rights; and damages, including treble damages, in an amount to be determined at trial, or statutory damages pursuant to 15 U.S.C. 1117;

E.    On its Fifth Claim, damages in an amount to be determined at trial; and injunctive relief, including (a) the cancellation or transfer of the "verivend.support" domain and any other domains registered by Defendants or any other entities controlled by Claver that use the Verivend Mark or are confusingly similar to the Verivend Mark; and

(b) restraining Claver and any entities controlled by him from using other domains that use the Verivend Mark or are confusingly similar to the Verivend Mark;

F.    On its Sixth Claim, an Order permanently enjoining Defendants from (a) the unauthorized use of the Verivend Mark or Verivend's other intellectual property, including by registering confusingly similar domains; (b) impersonating Verivend or its employees; (c) fabricating or manipulating documents that purport to show wire transfers from Verivend or approved by Verivend; and (d) making knowingly false statements to third parties regarding Verivend or its business practices; and

G.    For such other and further relief as the Court deems just and proper.

Dated: Buffalo, New York                 PHILLIPS LYTLE LLP
       December 13, 2023

                                         By:  _/s/ Jeffrey D. Coren_____
                                                Jeffrey Coren
                                         Attorneys for Plaintiff
                                         *Verivend Inc.*
                                         One Canalside
                                         125 Main Street
                                         Buffalo, New York 14203-2887
                                         Telephone No. (716) 847-8400
                                         jcoren@phillipslytle.com

Doc #11571484